[ECF No. 3]

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **JANE DOE (C.M.),** <br><br> Plaintiffs, <br><br> v. <br><br> **G6 HOSPITALITY, LLC, et al.,** <br><br> Defendants. | Civil No. 25-13041 (CPO)(EAP) |

## MEMORANDUM ORDER

This matter having come before the Court by way of Plaintiff's Motion to Proceed with Use of a Pseudonym, ECF No. 3; and Defendants having filed no opposition; and the Court deciding this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1; and for good cause shown, the Court finds the following:

**A.    Factual Background[1]**

1.    Plaintiff Jane Doe, a resident of Mercer County, New Jersey, was a trafficked person as defined in the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 22 U.S.C. § 7102.  ECF No. 1 ("Compl.") ¶ 10.

2.    Defendants G6 Hospitality, LLC; G6 Hospitality Franchising, LLC; G6 Hospitality IP, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; Motel 6 Operating, LP.; and Maple Shade Lodging, LLC (collectively, "Defendants") owned and/or operated various motels.  *Id.* ¶¶ 12-32.

3.    According to the Complaint, in May 2014, Plaintiff Jane Doe was a seventeen-year-old minor grieving her mother's recent death and facing homelessness.  ECF No. 1 ("Compl.") ¶

---

[1] The Court takes these factual allegations from Plaintiff's Complaint.

39. While walking to a store, Plaintiff met Stanton Krogulski, known as "S," who presented himself as friendly man offering companionship. *Id.* He lured Plaintiff to the Motel 6, located at 2798 Route 73 North, Maple Shade, New Jersey 08053. *Id.*

4. Within days of meeting S, S's demeanor changed, and he began grooming and manipulating Plaintiff, coercing her into sex trafficking from May 2014 until she escaped in mid-August 2015. *Id.* ¶ 40. During that time, S used "physical violence, verbal abuse, threats, and drugs . . . to force her compliance." *Id.* ¶ 41. He also provided money to Plaintiff to foster dependency. *Id.* When Plaintiff resisted, "S became violent, hitting and dragging her, and on one occasion raped her after she refused to comply." *Id.* ¶ 42. He also threatened to "'blow [her] fucking head off' if she spoke out or attempted to leave," a threat she believed because he owned firearms. *Id.* S constantly monitored Plaintiff, never letting her out of his sight. *Id.* ¶ 43.

5. Plaintiff alleges that S trafficked her at the Motel 6 approximately twice a month throughout the year, at which time she was seventeen and eighteen years old. *Id.* ¶ 44. S consistently rented the same rooms at the Motel 6, which, according to Plaintiff, suggests a connection that ensured room availability. *Id.* ¶ 45.

6. According to the Complaint, noticeable patterns occurred at the Motel 6, including "Black girls . . . dressed in distinctive revealing attire, arriving with S, a white male with an aggressive demeanor, and frequent male visitors entering and exiting the rooms." *Id.* ¶ 46. Approximately thirty men allegedly visited the trafficked women's rooms daily, with over 100 sexual encounters occurring during the trafficking period. *Id.* Plaintiff alleges that trafficking victims, including Plaintiff, were housed in a separate building not attached to the front desk, "with constant car and male foot traffic observable at all hours." *Id.* ¶ 47. Many of the trafficking victims staying at the Motel 6 engaged with a client every hour. *Id.* ¶ 50.

2

7. The Complaint alleges that Raj, the Motel 6 front desk worker, was aware of the trafficking activities, frequently conversed with S, and appeared to have a friendly relationship with him. *Id.* ¶¶ 48-49.

8. Over the course of her captivity, Plaintiff alleges that she was trafficked multiple times at this location as a minor, under threats of harm and force. *Id.* ¶ 51. She further alleges that numerous signs of sex trafficking existed, such as large quantities of condoms in the trash; ongoing stays paid for in cash or a pre-paid card on a day-to-day basis; numerous men entering and exiting the same room at all hours; arriving with few possessions for extended stays; and "the appearance, demeanor, and restricted movements" of Plaintiff and the other victims. *Id.* Plaintiff contends that "Defendants knew or reasonably should have known that [she] was being trafficked"; yet, they willfully turned a blind eye. *Id.* Plaintiff asserts that staff at the Motel 6 knew or had reasonable opportunity to observe Plaintiff, who was being sexually exploited daily. *Id.* ¶ 53.

9. After approximately one year, Plaintiff escaped when S sent her to the gas station convenience store, which was the first time S had let Plaintiff out of his sight. *Id.* ¶ 55. Once at the gas station, she borrowed a phone from a bystander and called her grandmother to come pick her up. *Id.*

10. According to the Complaint, at all material times, Defendants "participated directly in the operation and management of Motel 6 and exercised systematic control over this Motel 6 location." *Id.* ¶ 57. Plaintiff claims that G6 Hospitality "facilitated the trafficking through repeated renting of rooms and substantial oversight over hotel operations." *Id.* ¶ 60. Plaintiff asserts that "[e]mployees at these hotels were aware of her trafficking and, in accordance with corporate-wide policies, reported such activity directly to Defendants." *Id.* ¶ 90. "Despite this knowledge, Defendants failed to take appropriate action to investigate, intervene, or report the illegal activity to authorities[.]" *Id.* ¶ 91.

11. On July 9, 2025, Plaintiff filed a Complaint against Defendants alleging violation of the TVPRA, 18 U.S.C. § 1595.

12. Plaintiff now moves for an order to proceed with the use of a pseudonym. *See* ECF No. 3. Defendants do not oppose the motion, but "because a motion for leave to proceed under pseudonym intrudes on the public's right of access to judicial proceedings, the Court cannot grant the motion as unopposed without further analysis." *Doe v. Drexel Univ.*, No. 23-3555, 2023 WL 8373166, at *1 (E.D. Pa. Dec. 4, 2023).

**B.    Legal Standard**

13. "'[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public.'" *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Daubney v. Cooper*, 109 Eng. Rep. 438, 441 (K.B. 1829); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). Federal Rule of Civil Procedure 10(a) embodies that principle by "requir[ing] parties to a lawsuit to identify themselves in their respective pleadings." *Id.* at 408 (citing Fed. R. Civ. P. 10(a); *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)). "A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.'" *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)).

14. Nonetheless, courts have recognized that "in exceptional cases," a party may proceed anonymously. *Id.* "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality,'" *id.* at 408 (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)), as well as "cases involving victims of sexual assault," *Doe v. Princeton Univ.*, No. 20-4352, 2020 WL 3962268, at *2 (D.N.J. July 13, 2020) (citations omitted).

15. The Third Circuit Court of Appeals has set forth a "non-exhaustive, multi-factor test" to be used in determining whether a plaintiff's "reasonable fear of severe harm" merits an exception to "'the public's common law right of access to judicial proceedings.'" *Doe v. Coll. of*

4

*N.J.*, 997 F.3d 489, 495 (3d Cir. 2021) (quoting *Megless*, 654 F.3d at 408)). The factors in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Coll. of N.J.*, 997 F.3d at 495 (quoting *Megless*, 654 F.3d at 409).

16. The factors "advising against anonymity" include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Megless*, 65 F.3d at 409).

17. Ultimately, "[t]he *Megless* factors require a fact-specific, case-by-case analysis." *Id.* "Decisions regarding whether to allow a party to proceed under a pseudonym are consigned to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Homesite Ins. Co. of the Midwest v. Ewideh*, No. 22-1664, 2023 WL 426923, at *2 (M.D. Pa. Jan. 26, 2023) (citation omitted).

**C.   Analysis**

18. Applying the above standard, the Court finds that the *Megless* factors substantially weigh in favor of granting Plaintiff's Motion to Proceed with Use of a Pseudonym.

19. Turning initially to the factors weighing in favor of anonymity, the Court must <u>first</u> consider the extent to which Plaintiff's identity has been kept confidential. *Megless*, 654 F.3d at

5

409. Plaintiff contends that "she has taken deliberate steps to protect her identity by filing under a pseudonym." ECF No. 3-1 (Pls.' Mem.) at 7. Nothing in the record before the Court suggests that Plaintiff has ever publicly disclosed her identity in connection with this matter. As such, this factor weighs in favor of Plaintiff's requested relief.

20.     Second, Plaintiff has established a reasonable fear of harm from the public disclosure of her name. Courts in the Third Circuit have repeatedly allowed victims of sexual assault to proceed under a pseudonym due to a reasonable fear of harm from disclosure of their identities. *See, e.g.*, *Doe v. Phila.*, No. 23-0342, 2023 WL 4110064, at *3 (E.D. Pa. June 21, 2023) (holding that plaintiff's "fear of substantial public stigmatization and backlash . . . given her detailed allegations of sexual assault at the hands of a law enforcement agent" weighed in favor of anonymity); *Doe v. Schuylkill Cnty. Courthouse*, No. 21-477, 2022 WL 1424983, at *8 (M.D. Pa. May 5, 2022) (finding that fear of stigmatization and ongoing embarrassment and humiliation is "a consideration which has been held to weigh in favor of anonymity for plaintiffs who have alleged they were sexually harassed or assaulted"); *Doe v. Lund's Fisheries, Inc.*, No. 20-11306, 2020 WL 6749972, at *2 (D.N.J. Nov. 17, 2020) (finding that plaintiff's status as an alleged victim of sexual assault demonstrates "substantial grounds to support his fear of public disclosure"); *Princeton Univ.*, 2020 WL 3962268, at *3 (granting motion to proceed under a pseudonym where plaintiff was alleged victim of sexual assault and noting that "victims of sexual assault have been deemed members of a vulnerable class worthy of protected status"); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting motion to proceed under pseudonym where plaintiff claimed to have been sexually assaulted by defendant state trooper).

21.     Here, Plaintiff has alleged that she was the victim of sex trafficking that occurred over the course of more than a year. Compl. ¶ 40. She contends that her alleged trafficker used physical and mental abuse, drugs, and money to force her into these situations. *Id.* ¶¶ 41-43. Plaintiff asserts that disclosure of her identity her "would cause significant psychological harm,

jeopardize her safety, and risk irreparable damage to her personal and professional life. It could adversely affect her employment, relationships, and future opportunities, forcing her to live under the permanent shadow of public identification as a trafficking victim." ECF No. 3-1 (Pl.'s Mem.) at 7. Given the reasonable and well-founded fear of ongoing stigmatization, trauma, embarrassment, and humiliation to Plaintiff, anonymity is appropriate.

22. <u>Third</u>, the Court must consider the "magnitude of the public interest in maintaining the confidentiality of the litigant's identity[.]" *Megless*, 654 F.3d at 409 (quotation omitted). This factor supports anonymity if "other similarly situated litigants [would] be deterred from litigating claims that the public would like to have litigated[]" if they could not proceed pseudonymously. *Id.* There is a "public interest in preserving the courage to sue." *Del. Valley Aesthetics, PLLC v. Doe 1*, No. 20-456, 2021 WL 2681286, at *2 (E.D. Pa June 30, 2021); *see also Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019) ("There is a recognized public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs."); *Doe v. Oshrin*, 299 F.R.D. 100, 104 (D.N.J. May 28, 2014) (citing *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights")).

23. According to the Complaint, Plaintiff was only one of multiple minor girls in the sex trafficking ring. *Id.* ¶¶ 46-47. Plaintiff provides allegations to suggest that other individuals may have the same causes of action. *Id.* ¶¶ 46-47, 50-51. Absent an ability to proceed anonymously, other similarly-situated victims may be discouraged from pursuing lawsuits. Therefore, this factor also weighs in favor of anonymity.

24. <u>Fourth</u>, the Court must examine the public's interest, if any, in ascertaining Plaintiff's identity. *See Megless*, 654 F.3d at 409 (quotation omitted). Both Plaintiff and Defendants here are private citizens litigating highly-sensitive issues, thus attenuating any public

7

interest. Moreover, the public's ability to monitor the litigation will remain unimpeded since Plaintiff's Motion only seeks to allow her to maintain confidentiality over her own identity. The remainder of the docket will remain public. As such, the use of a pseudonym will "not interfere with the public's right or ability to follow the proceedings." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997).

25. <u>Fifth</u>, the Court must consider the "undesirability of an outcome adverse to the pseudonymous party and attributable to [the party's] refusal to pursue the case at the price of being publicly identified[.]" *Megless*, 654 F.3d at 409 (quotation omitted). Here, Plaintiff has proffered that requiring her to disclose her identity "would undermine the very purpose of this action and retraumatize Plaintiff by placing her back in the vulnerable position she sought to escape." ECF No. 3-1 (Pl.'s Mem.) at 7. Giving credence to this allegation, the Court finds the fifth factor favors anonymity. *See Oshrin*, 299 F.R.D. at 104 (finding fifth *Megless* factor satisfied by a complaint's proffer that plaintiff's willingness to pursue her claims would be inhibited by denial of anonymity).

26. <u>Finally</u>, the last *Megless* factor in favor of anonymity asks "whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Megless*, 654 F.3d at 409 (quotation omitted). As Plaintiff has provided the Court with valid reasons in support of her request to proceed anonymously, and Defendants have put forth no allegations or evidence of any nefarious motives, this factor has no bearing on the Court's analysis.

27. Turning next to the *Megless* factors that weigh against anonymity, the Court finds that these factors "do not tip the balance" against Plaintiff's Motion. *Rutgers*, 2019 WL 1967021, at *4.

28. <u>First</u>, although there is a "universal public interest in access to the identities of litigants," *Megless*, 654 F.3d at 411, "this interest exists in some respect in all litigation and does not outweigh the strength of the factors in favor of Plaintiff's use of a pseudonym." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 551 (D.N.J. July 14, 2006).

8

29. <u>Second</u>, the Court must consider "whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained[.]" *Megless*, 654 F.3d at 409 (quotation omitted). There is not. "[T]he subject matter of this litigation [sexual assault] is common" . . . [and] Plaintiff is not a public figure," thus creating no heightened public interest. *Doe v. New Jersey*, No. 24-9531, 2024 WL 4880260, at *4 (D.N.J. Nov. 25, 2024).

30. <u>Finally</u>, the Court notes that neither the Defendants, the public, nor the press have expressed opposition to Plaintiff's Motion. Therefore, this factor has no bearing on the analysis.

31. Overall, the Court finds that the balance of the *Megless* factors weighs heavily in favor of allowing Plaintiff to proceed through the use of a pseudonym. The delicate factual circumstances alleged in this case, combined with the lack of any particularly enhanced public interest in the litigants, outweigh the importance of fully open judicial proceedings.

**THEREFORE,**

**IT IS** this **5th** day of **November 2025**,

**ORDERED** that Plaintiffs' Motion to Proceed with Use of a Pseudonym is **GRANTED**.

s/Elizabeth A. Pascal  
ELIZABETH A. PASCAL  
United States Magistrate Judge

cc: Hon. Christine P. O'Hearn, U.S.D.J.